PARIENTE, C.J.,
dissenting.
For a financial impact statement to comply with the statutory and constitutional requirement, it must be a clear and unambiguous statement of the estimated increase or decrease in any revenues or costs to state or local governments resulting from the proposed initiative. And while the Financial Impact Estimating Conference may set forth “a range of potential impacts in the financial statement,” it is critical that the statement be neutral and not contain politically charged language that could be seen as favoring or opposing the initiative.
This Court has apparently been charged by the Legislature with ensuring that the financial impact statement prepared by the Financial Estimating Conference complies with these requirements. Because the constitutional amendment requiring a financial impact statement was enacted in 2002, this year is the first time that this Court has been called upon to conduct this review. As a result of the time parameters set forth in the statute, and the number of financial impact statements submitted to us in a very short period of time, we have endeavored to strike a balance between this Court’s limited ability to review the financial information presented and our obligation to ensure that the voters are presented with a neutral, clear and unambiguous. statement. The voters of this state passed the constitutional amendment requiring the ballot to contain a financial impact statement in order to understand and make informed decisions based on the financial implications of the initiatives to be voted on. To date, we have required scrupulous compliance with this constitutional mandate.
The particular constitutional initiative in this case deals with the controversial subject of gambling. The Court was initially presented with a financial impact statement and rejected it because the use of the phrase “problem gambling” was not a neutral phrase and amounted to editorializing. We remanded the financial impact statement for redrafting. On remand, the Financial Estimating Conference attempted to redraft the second sentence instead of simply excising the sentence, as was done in the case of the constitutional initiative dealing with repeat medical malpractice. Had the Conference simply redrafted the sentence to eliminate the editorializing, I would have had no problem with the revised statement. Instead, the second sentence of the resubmitted statement contains a whole new substantive portion not contained in the initial statement in its addition of the phrase “local sales tax-related revenues will be reduced by $5 million to $8 million annually.”[1]
The purpose of our limited remand was to redraft the financial impact statement to address language that was problematic, *968 not to inject new issues that were not the subject of the initial remand. Otherwise, the result would be a never-ending spiral of “new” review in proceedings that should become increasingly narrow in scope. If the process started many months ahead of the statutory deadline, perhaps that would be less of a problem. But the ability to conduct a meaningful and thoughtful review is adversely affected where time is very short, as it is here (the statutory deadline specifies all review must be completed by 5:00 p.m. 75 days before the election, making this year’s deadline August 19, 2004). Adding new issues on remand is not only unfair to the proponents but also increases the pressures on this Court to start over again analyzing new assertions with each redraft as the time available to do so becomes shorter. That is not what the statutory scheme contemplates, and it is not an efficient way to conduct judicial review proceedings.
Temporal and practical concerns aside, the new language added is both confusing and incomplete and is seemingly unrelated to the first portion of the second sentence. The second part of the second sentence was not proposed as a way to quantify the alleged increase in unspecified social costs associated with gambling referenced in the first part of the sentence.
As set forth clearly in the Conference’s explanatory statement and working papers, the two halves of the sentence deal with two separate issues. The first half deals with increased government costs from compulsive gambling. The second half deals with a separate issue, addressing not increased costs but decreased local sales tax revenues. Further from a review of the statement itself, it is unclear whether the language “local sales tax-related revenues will be reduced by $5 million to $8 million annually” is meant to be seen solely as a consequence of the approval of slot machines in Miami-Dade or Broward counties, or is somehow also connected to the costs associated with additional gambling. Moreover, it is not clear whose local sales tax revenues will be reduced by $5 million- to $8 million. The sentence could be construed to mean that a number of localities will each suffer a $5 to $8 million reduction in sales-tax revenues, that the reduction applies only “locally” to Miami-Dade or Broward counties, or that “local government” stands to lose $5 to $8 million statewide. These are substantial differences. Although the final interpretation is supported by the more detailed financial information statement prepared by the Conference pursuant to section 100.371(6)(d)(3), this meaning is not clearly and unambiguously conveyed by the impact statement, as required by law. The voters should not have to guess at the financial impact statement’s meaning.
The financial information statement reveals an additional problem with the impact statement’s reference to a $5 to $8 million loss in local sales tax revenues. The more detailed information statement, which the voters will not see, provides that “local governments in Miami-Dade and Broward counties would likely experience offsetting increases in tax collections due to increased local tourism.” Therefore, any alleged decrease in local sales tax revenues will be offset by increases in tax collections from tourism spending. The revised financial impact statement creates the false impression that there will only be reductions in sales tax revenues.
As we begin our uncharted course of reviewing financial impact statements, we *969 ought to insist on statements that are precise, accurate, and neutral. The purpose of the amendment approved by the voters and now contained in article XI, section 5(b) of the Florida Constitution was an important one — to ensure that voters understand the financial implications of the initiatives that they vote on (with the bullet train and the class size amendments being notable recent examples).. The voters of this state, who will be determining whether to approve or reject the ballot initiative, deserve no less. And the statutory provision enacted pursuant to the constitutional mandate, section 100.371(6)(b), requires that the financial impact statement be both “clear and unambiguous.” By our recent decisions remanding financial impact statements to the Conference for redrafting, we have indicated that strict compliance with this constitutional mandate is essential to the validity of a financial impact statement.
Strict compliance is especially important because the financial impact statement will have the imprimatur of the government. Financial impact statements cannot and should not be used by the government to sway the electorate by using language designed to achieve a desired result-that is, to vote in favor or .against the initiative.
In this case, the additional language is beyond the scope of the statutory remand. It is also confusing and incomplete, and therefore potentially misleading to voters. I would thus remand the revised financial impact statement to the Conference with directions to redraft pursuant to section 100.371(6)(d)(l) or excise the second sentence.
ANSTEAD, J., concurs.

. The second sentence of the financial impact statement previously read:
However, if the voters in Miami-Dade County, Broward County, or both counties authorize slot machines at parimutuel facilities, expenditures by the state and local governments related to problem gambling may increase by an unknown amount.
*968 The second sentence in the revised financial impact statement now reads:
If slot machines are authorized in Miami-Dade or Broward counties, governmental costs associated with additional gambling will increase by an unknown amount and local sales tax-related revenues will be reduced by $5 million to $8 million annually.